**EDGERLY  v.  KENNELLY et al.**
**No. 11131.**

United States Court of Appeals
Seventh Circuit.

Sept. 1, 1954.

Rehearing Denied Sept. 20, 1954.

Eugene T. Devitt, Chicago, Ill., for appellant.

John J. Mortimer, W. Donald Mc-Sweeney, Thomas Dodd Healy, Harold Stickler, Robert Tieken, John Peter Lulinski and L. Louis Karton, Head of Appeals and Review Division, Chicago, Ill., for appellee; Arthur Magid, Asst. Corp. Counsel, Chicago, Ill., of counsel.

Before MAJOR, Chief Judge, and LINDLEY and SWAIM, Circuit Judges.

MAJOR, Chief Judge.

Plaintiff commenced this action for the recovery of damages against certain officials of the City of Chicago and others (named as defendants) pursuant to the Federal Civil Rights Act, 8 U.S.C.A. §§ 43, 47 and 48.[1] The complaint sets forth detailed allegations of police brutality, which it was alleged the defendants (except defendant Kennelly) committed pursuant to a conspiracy. There is no occasion to recite the allegations of the complaint in view of the question here presented for decision. The District Court in denying defendants' motion to dismiss held that a cause of action was stated.

Subsequent to the commencement of this civil action, plaintiff was convicted of serious criminal offenses in both the United States District Court of Chicago and the State Court of Cook County. As a result of his conviction in the District Court, he was sentenced to a long

[1]  Now 42 U.S.C.A. §§ 1983, 1985, 1986.

term in the custody of the Attorney General of the United States, and is now and has been at all times material to the question with which we are concerned confined in the United States Penitentiary at Alcatraz Island, California.

On May 22, 1953, a petition was filed by Eugene T. Devitt, attorney for plaintiff, in which it was recited that Daniel A. Gilbert (one of the defendants) had submitted interrogatories pursuant to Rule 33 of the Federal Rules of Civil Procedure, 28 U.S.C.A. and that plaintiff's attorney and Gilbert had agreed that in lieu of plaintiff filing an answer to the interrogatories his deposition be taken in Chicago. The petition prayed for the issuance of a writ of *habeas corpus ad testificandum*, directed to the Penitentiary Warden at Alcatraz, commanding that plaintiff be returned to Chicago for the purpose of taking such deposition. Pursuant to said petition, District Judge William J. Campbell, on May 22, 1953, entered an order directing the issuance of the writ. On July 15, 1953, the government by the United States Attorney in Chicago moved to quash the writ. On September 18, 1953, Judge Julius J. Hoffman of the same court entered an order quashing the writ directed by Judge Campbell. On January 5, 1954, Judge Hoffman denied a motion by defendant Gilbert to dismiss on the ground that plaintiff had not been produced for the taking of his deposition.

The case being at issue was set for trial on January 18, 1954. Three days previously, January 15, 1954, a petition was filed by plaintiff's attorney wherein he prayed for the issuance of a writ of *habeas corpus ad testificandum* directed to the Warden of the United States Penitentiary, Alcatraz Island, California, commanding him to produce the plaintiff in the District Court in Chicago on Monday, January 18, 1954, to testify in the civil action in which he was the plaintiff. On the same date, an order was entered by Judge Hoffman denying the prayer of the petition, and on January 18, 1954, plaintiff's attorney stated that he was unable to proceed without the testimony of plaintiff. On January 18, 1954, an order was entered by Judge Hoffman upon defendants' motion, dismissing the action. From this order of dismissal the appeal comes to this court.

The contested issues as stated by plaintiff are: (1) Did the District Court have jurisdiction by means of the writ sought to require that the plaintiff's custodian produce him in Chicago for the purpose of testifying as a witness in his own behalf in his civil action for damages? (2) Did Judge Hoffman have the authority to quash the writ previously issued by Judge Campbell? and (3) Did Judge Hoffman abuse his discretion in denying the writ sought by the plaintiff for the purpose of enabling him to testify in Chicago?

It is obvious that contested issues 2 and 3 require no consideration if contested issue 1 is decided adversely to plaintiff. More particularly, if the court was without jurisdiction to issue the writ sought, no other questions need be considered.

The jurisdictional issue is important, and we might add, novel, in the sense that we know of no case wherein the precise question has been decided. The conclusion which we reach is that the court properly denied issuance of the writ sought on the ground that it was without jurisdiction.

Plaintiff emphasizes that Congress, by its civil rights enactment, has specifically provided redress for a violation of his constitutional rights. This is true but, even so, we do not discern how it aids in a solution of the jurisdictional issue. After all, the action is civil and the redress sought is damages for the alleged violation of plaintiff's rights. It is only intimated, not directly asserted, that there is language in the civil rights provisions which enhances territorial jurisdiction of a court and we find no reason to think the jurisdictional issue is any different from that which it would be if the cause of action rested upon some other premise. Plaintiff in his brief tacitly concedes that which he expressly conced-

ed in oral argument, that is, that the jurisdiction of the court, if it exists, must be found in the "all writs statute," 28 U.S.C.A. § 1651, which authorizes a court to "issue all writs necessary or appropriate in aid of their respective jurisdictions and agreeable to the usages and principles of law." It is pointed out that the court had jurisdiction of the action and it was in aid of its jurisdiction that the plaintiff be brought to Chicago to testify in his own behalf. This contention, if accepted, would mean that this provision enlarged the territorial jurisdiction of the court. We think that such is not its purpose. While the section augments the power of a court in cases of existing jurisdiction, it in no wise expands or extends its territorial jurisdiction.

As stated in In re Previn, 1 Cir., 204 F.2d 417, 418, "The basic purpose of § 1651, and of its statutory predecessors, was to assure to the various federal courts the power to issue appropriate writs and orders of an auxiliary nature in aid of their respective jurisdictions as conferred by other provisions of law."

■ In Phillips v. Hiatt, D.C., 83 F. Supp. 935, at page 938, a case in point by analogy, the reasoning of which we think is sound, the court cited, State of Georgia v. Pennsylvania R. Co., 324 U.S. 439, 65 S.Ct. 716, 89 L.Ed. 1051, as authority for the statement, "Under general provisions of law, a United States District Court cannot issue process beyond its territorial limits", and Ahrens v. Clark, 335 U.S. 188, 68 S.Ct. 1443, 92 L.Ed. 1898, as authority for the statement, "A specific exception by Congress is a prerequisite to the extension of the district courts' jurisdiction beyond their respective territorial limits." Later, the court stated, referring to Sec. 1651, 83 F.Supp. at page 939: "But the section does not increase the respective territorial boundaries of the federal district courts' jurisdiction. The section rather provides general standards to guide the federal courts in issuing writs within their territorial limits."

In State of Georgia v. Pennsylvania R. Co., 324 U.S. 439, 467, 65 S.Ct. 716, 731, the court stated: "Apart from specific exceptions created by Congress the jurisdiction of the district courts is territorial."

In Ahrens v. Clark, 335 U.S. 188, 190, 68 S.Ct. 1443, 1444, the court cited the Georgia case for the statement, "We start from the accepted premise that apart from specific exceptions created by Congress the jurisdiction of the district courts is territorial."

As stated, Congress has not created any special exceptions in its civil rights provisions and Sec. 1651 cannot be construed as doing so. To do so would in effect destroy existing limitations on the territorial jurisdiction of all federal courts because if Sec. 1651 be considered as creating an exception in one form of civil suit for damages, we see no reason why it should not likewise be construed as to any and all such actions. It must be kept in mind that no question is presented as to legality of plaintiff's confinement in Alcatraz. The sole purpose in seeking his presence in Chicago was that he might as a witness give testimony in a civil action. If the court had jurisdiction to require his presence for that purpose, it would seem to follow that it would have jurisdiction to require the presence of any other person confined in prison who was asserted to be a material witness.

Defendants, on the jurisdictional issue, place much stress upon Ahrens v. Clark, 335 U.S. 188, 68 S.Ct. 1443, 92 L.Ed. 1898, while plaintiff relies upon United States v. Hayman, 342 U.S. 205, 72 S.Ct. 263, 96 L.Ed. 232, and United States v. Morgan, 346 U.S. 502, 74 S.Ct. 247. None of these cases is decisive of the question before us and all may be distinguished on the basis that in each a prisoner was contending that his incarceration was a result of a deprivation of his constitutional rights, while here, in contrast, the action is for the recovery of damages. In the Ahrens case, it was held that a District Court was without jurisdiction to direct a writ of habeas corpus beyond its territorial jurisdiction. In the Hayman case, a federal prisoner made

a motion, under 28 U.S.C.A. § 2255, to set aside his sentence because it was imposed in violation of his constitutional rights. The court held that a District Court under this section had extra territorial jurisdiction to require the production of a prisoner so that he might testify at a hearing provided for by the section. The court stated, 342 U.S. at page 220, 72 S.Ct. at page 273: "Issuance of an order to produce the prisoner is auxiliary to the jurisdiction of the trial court over respondent granted in Section 2255 itself and invoked by respondent's filing of a motion under that Section." The reasoning of the court in effect is that Congress by the enactment of Sec. 2255 created an exception to the general territorial jurisdiction of federal courts by providing that a prisoner could test the validity of his imprisonment in the sentencing court, where he was entitled to a hearing on the allegations of his petition. In any event, we think the reasoning is inapposite to a civil action for the recovery of damages. Other cases relied upon by plaintiff are of no aid to his contention, generally for the same reason.

Plaintiff asserts somewhat vaguely that the refusal to require his production as a witness was a violation of his constitutional rights. However, we are not aware of any constitutional right where a prisoner lawfully committed has to be produced as a witness either in his own or some other case in an action for the recovery of damages. It must be remembered that a person in his unfortunate situation is stripped of many of the rights possessed by a free person and guaranteed by the Constitution. As stated in Price v. Johnston, 334 U.S. 266, 285, 68 S.Ct. 1049, 1060, 92 L.Ed. 1356: "Lawful incarceration brings about the necessary withdrawal or limitation of many privileges and rights, a retraction justified by the considerations underlying our penal system."

Holding as we do that the court was without jurisdiction to direct issuance of the writ of *habeas corpus ad testificandum,* we see no point, certainly no necessity, in discussing other issues presented. Upon announcement by plaintiff's attorney, at the time the case was called for trial, that he was unable or unwilling to proceed without the testimony of plaintiff, we think the case was properly dismissed; in fact, it is not discernible that the court under the circumstances had any alternative.

The order of dismissal is

Affirmed.