**Norman L. CLARK**
v.
**H. S. HENDRIX and William Rucker.**
**Civ. A. No. C74–27G.**

United States District Court,
N. D. Georgia,
Gainesville Division.
July 7, 1975.

Ernest V. Harris, Georgia Legal Services Programs, Gainesville, Ga., for plaintiff.

Sam S. Harben, Jr., Robinson, Harben & Armstrong, Gainesville, Ga., Jack S. Davidson, Davis & Davidson, Jefferson, Ga., for defendants.

## ORDER

O'KELLEY, District Judge.

This 42 U.S.C. § 1983 action is before the court on the plaintiff's motion to

compel his production at trial and also to compel the production of a witness in his behalf. The cause of action in this suit arises from a time when the plaintiff was incarcerated in the Jackson County Correctional Institution and is one for which he seeks some $750,000 in monetary damages for the alleged denial of his constitutional rights by the named defendants. The plaintiff is presently a federal prisoner incarcerated at the United States Medical Center for Federal Prisoners in Springfield, Missouri. The witness whose attendance he seeks is presently a state prisoner incarcerated in the Georgia State Prison at Reidsville, Georgia. Since the plaintiff is indigent and proceeding *in forma pauperis,* he seeks to have the federal government bear all the expenses connected with this motion.

At the request of this court, the plaintiff is now being represented by Mr. Ernest V. Harris of the Georgia Legal Services Program. Mr. Harris has submitted an affidavit stating that in order for the plaintiff to receive a fair trial, the plaintiff must be in court and be able to testify personally and that it is equally necessary that the requested witness be present. The plaintiff essentially argues that he has a right to be brought to court and that he also has a right to have his witness produced for trial. The plaintiff does not cite any authority which would directly support his contention that he has such a right or that this court has the authority to order such production, but he relies on the principle that prisoners do not lose their right of access to the courts but that they retain their right to seek redress for their grievances even though they are incarcerated, citing *Cruz v. Beto,* 405 U.S. 319, 92 S.Ct. 1079, 31 L. Ed.2d 263 (1972); *Johnson v. Avery,* 393 U.S. 483, 89 S.Ct. 747, 21 L.Ed.2d 718 (1969).

*Cruz* held that the district court had erred in dismissing the complaint of a prisoner who alleged "that he was not allowed to use the prison chapel, that he was prohibited from writing to his religious advisor, and that he was placed in solitary confinement for sharing his religious material with other prisoners." 405 U.S. at 319, 92 S.Ct. 1079. The Court said that while prison officials had wide latitude in the administration of prison affairs, prisoners did have the right of access to the courts to seek redress for their grievances about the administration of the prison. *Johnson* held that Tennessee could not absolutely bar inmates from furnishing assistance to other prisoners in preparing petitions for post-conviction relief in the absence of some alternative for prisoners who were unable to prepare their own petitions. Each of these cases involved a situation where the prisoner sought to air a complaint about his confinement. See *Andrade v. Hauck,* 452 F.2d 1071 (5th Cir. 1971), where the Fifth Circuit noted that the fourteenth amendment protected "the right of prisoners to seek access to the courts for consideration of claims *concerning the conditions of their incarceration." Id.* at 1072 (emphasis supplied). Unlike the above cases, the plaintiff in this action does not complain about the conditions of his present confinement, nor does he seek any relief with respect to such confinement. Rather, the plaintiff seeks monetary damages in the sum of $750,000 in a civil suit for deprivations which were alleged to have occurred with respect to some earlier confinement. The Fifth Circuit has held that prisoners do not have an absolute right to file any civil action they desire and upheld a prison rule prohibiting the filing of any civil action unrelated to their personal liberty. *Tabor v. Hardwick,* 224 F.2d 526 (5th Cir. 1955), *cert. denied,* 350 U.S. 971, 76 S.Ct. 445, 100 L. Ed. 843 (1956). *See also Kirby v. Thomas,* 336 F.2d 462 (6th Cir. 1964). While prisoners do retain their right of access to the courts, this does not necessarily mean that a prisoner has some inherent constitutional right to appear personally at a hearing or at a trial with respect to the civil suit which he has

filed. *McKinney v. Boyle*, 447 F.2d 1091 (9th Cir. 1971); *Potter v. McCall*, 433 F.2d 1087 (9th Cir. 1970); *Armstrong v. Rushing*, 352 F.2d 836 (9th Cir. 1965); cf. *Edgerly v. Kennelly*, 215 F.2d 420 (7th Cir. 1954). The Supreme Court very succinctly stated this principle in the case of *Price v. Johnston*, 334 U.S. 266, 285–86, 68 S.Ct. 1049, 1060, 92 L.Ed. 1356 (1948):

> Lawful incarceration brings about the necessary withdrawal or limitation of many privileges and rights, a retraction justified by the considerations underlying our penal system. Among those so limited is the otherwise unqualified right given by § 272 of the Judicial Code, 28 U.S.C. § 394 [now 28 U.S.C. § 1654] to parties in all courts of the United States to "plead and manage their own causes personally."

It is thus clear that the plaintiff in this action has no *right* to have a lawfully incarcerated prisoner produced as a witness at his civil trial for damages, nor does plaintiff have a *right* to be present himself. This is not to say, however, that a prisoner-plaintiff is totally foreclosed from having such witnesses in every circumstance—in situations where the court has jurisdiction over the potential witnesses it could undoubtedly exercise its discretion in a proper case and have such witnesses produced at trial.

To have the witnesses produced in this case as the plaintiff requests, the proper avenue for obtaining such relief is not through a motion to compel their production but is through the issuance of a writ of *habeas corpus ad testificandum* under the provisions of 28 U.S.C. § 2241. Since a prisoner is beyond the reach of an ordinary subpoena, this writ is the common law writ which is used to bring such an incarcerated prisoner to court to testify. *Gilmore v. United States*, 129 F.2d 199 (10th Cir. 1942); *Neufield v. United States*, 73 U.S.App.D.C. 174, 118 F.2d 375, 385 (1941). The granting of such a writ lies within the trial court's considered discretion. *United States v. Lupino*, 480 F.2d 720 (8th Cir. 1973); *United States v. Goldenstein*, 456 F.2d 1006 (8th Cir. 1972); *Gilmore v. United States, supra*. The case *sub judice* does not present a situation, however, where this court must only decide whether or not it should exercise its discretion to bring the plaintiff and the witness he desires to court. This case is further complicated by the fact that the plaintiff and the witness whose attendance he desires are both incarcerated outside the territorial jurisdiction of this court, the plaintiff's being in federal custody in Missouri and the witness' being in state custody at Reidsville, Georgia, which is in the Southern District of Georgia. The power to issue the writ granted by 28 U.S.C. § 2241(a) provides that such writs "may be granted by . . . the district courts . . . *within their respective jurisdictions*." (emphasis supplied). The threshold question then arises as to whether this court has the power to grant the relief which the plaintiff seeks in this case in light of the limiting phrase in § 2241(a).

There are three basic issues facing this court in the context of this case where a prisoner-plaintiff, proceeding *in forma pauperis*, seeks to have himself and a witness, both of whom are incarcerated outside the territorial jurisdiction of this court, produced in court to participate in his civil action for monetary damages unrelated to his present confinement: (1) Does this court have the power to issue a writ of *habeas corpus ad testificandum* to reach a prisoner incarcerated outside of its territorial jurisdiction to bring him to court to testify in a civil suit? (2) If this court does have such power, should it exercise its discretion in this instance to bring the plaintiff and his witness to court under the circumstances of this case? (3) If this court has the power and if this court feels that it should exercise its discretion to bring the prisoners to court, can federal funds be expended to cover the expenses of transporting,

housing, feeding, and guarding the plaintiff and his witness during the time of the trial?

## DOES THIS COURT HAVE THE POWER TO ISSUE THE WRIT EXTRATERRITORIALLY TO BRING A PRISONER TO COURT TO TESTIFY IN A CIVIL SUIT?

The question of whether or not this court has jurisdiction to issue a writ of *habeas corpus ad testificandum* outside of its jurisdiction is not an altogether settled issue. In one of the first cases where this issue was squarely presented to a court, the Seventh Circuit held that such a writ could not be issued extraterritorially. *Edgerly v. Kennelly*, 215 F. 2d 420 (7th Cir. 1954). *Edgerly* dealt with a case where the petitioner was seeking to be brought to Chicago from the federal penitentiary on Alcatraz Island, California, to have his deposition taken in conjunction with a civil rights action for money damages which he had instituted. In holding that the court could not issue a writ of *habeas corpus ad testificandum* extraterritorially, *Edgerly* held that 28 U.S.C. § 1651 (the all writs statute) [1] could not expand or extend the court's territorial jurisdiction. The court noted that the Supreme Court in *United States v. Hayman*, 342 U.S. 205, 72 S.Ct. 263, 96 L.Ed. 232 (1952), had held that 28 U.S.C. § 2255 created an exception to the general territorial jurisdiction of federal courts so that a federal court had extraterritorial jurisdiction to require the production of a prisoner at a hearing on the question of his motion to vacate his sentence pursuant to § 2255. However, *Edgerly* noted that in a civil action for damages, there existed no statutory exception such as existed in *Hayman*, and in the absence of such, the court could not issue the

writ outside of its territorial jurisdiction.

The *Edgerly* case would probably be dispositive of the case *sub judice* except for the Supreme Court decision in *Carbo v. United States*, 364 U.S. 611, 81 S.Ct. 338, 5 L.Ed.2d 329 (1961), and several later cases interpreting *Carbo*. In *Carbo* the Supreme Court held that a federal district court in California had the power under 28 U.S.C. § 2241 to issue a writ of *habeas corpus ad prosequendum* to a New York City prison official directing him to deliver the prisoner (incarcerated in New York) to California for criminal prosecution in that state.[2] The Supreme Court based its decision on a detailed study and analysis of the statutory history of habeas corpus and concluded that Congress had intended to apply the jurisdictional limitation found in 28 U.S.C. § 2241(a) on writs of *habeas corpus ad subjiciendum* but not on writs of *habeas corpus ad prosequendum*. In addition to the historical statutory analysis, the Court also placed great reliance on the need to allow the writ in the administration of the criminal justice system. The Court stated:

> The more strongly are we led to this construction by recognition of the continually increasing importance assigned to authorizing extraterritorial process where patently desirable. Cf. Fed.Rules Crim.Proc., 4(c)(2) and 17(e)(1). And it is the more so here where an accommodation is so important between the federal and state authorities. [Citation omitted]. That comity is necessary between sovereignties in the administration of criminal justice in our federal-state system is given full recognition by affording through the use of the writ both respect and courtesy to the laws of the respective jurisdictions. (Footnote omitted).

---

1. Apparently, the plaintiff did not raise the possibility of jurisdiction under 28 U.S.C. § 2241 since the court said plaintiff conceded that jurisdiction "if it exists, must be found in the 'all writs statute,' 28 U.S.C. § 1651 . . . ." 215 F.2d at 422.

2. The Ninth Circuit had held that the district court had jurisdiction but it based its authority on 28 U.S.C. § 1651. *Carbo v. United States*, 277 F.2d 433 (9th Cir. 1960).

364 U.S. at 620–21, 81 S.Ct. at 344. While *Carbo* dealt with statutory considerations dealing with writs of habeas corpus generally and based the district court's authority to issue the *habeas corpus ad prosequendum* on 28 U.S.C. § 2241(c)(5) (which includes writs of *habeas corpus ad testificandum*), the Court expressly withheld from deciding whether the writ of *habeas corpus ad testificandum* would be subject to the jurisdictional limitation. 364 U.S. at 618 n. 13, 81 S.Ct. 338.

Following the decision in *Carbo, Duncan v. Maine,* 195 F.Supp. 199 (D.Me. 1961), implied in dicta that *Carbo* would authorize a district court to issue a writ of *habeas corpus ad testificandum* extraterritorially. *Duncan* did not have to decide this question because there was no action pending in that court at that time because the petitioner was incarcerated outside of the district and the court could not gain jurisdiction over his attempted writ of *habeas corpus ad subjiciendum* under the principles of the then applicable decision of *Ahrens v. Clark,* 335 U.S. 188, 68 S.Ct. 1443, 92 L. Ed. 1898 (1948). *United States v. McGaha,* 205 F.Supp. 949 (E.D.Tenn.1962), followed *Duncan* and dealt with a defendant in a criminal case who requested a writ of *habeas corpus ad testificandum* to bring a prisoner incarcerated in a federal penitentiary in Virginia to the federal district court in Tennessee to testify in his behalf. The court in *McGaha* cited *Carbo* and 28 U.S.C. § 2241(c)(5) and stated: "The court has jurisdiction to issue the writ extraterritorially to the warden of the federal prison in another jurisdiction in a proper case." *Id.* at 951. *McGaha* went on to say that if the defendant were entitled to the witness, then because he was indigent he might be entitled to the attendance of the witness at government expense pursuant to Fed.R.Crim.P. 17(b).

The Fourth Circuit in *Word v. North Carolina,* 406 F.2d 352 (4th Cir. 1969), held that a prisoner incarcerated in one state could attack a state conviction in another state by filing his writ of habeas corpus in the district court of the demanding state after proper state exhaustion had been completed where that challenged conviction underlies a detainer filed with his present custodian. *Word* stated in dictum that the writ of *habeas corpus ad testificandum* is "probably available" extraterritorially [3] and relied on the Supreme Court's citation of *McGaha* in the case of *Barber v. Page,* 390 U.S. 719, 88 S.Ct. 1318, 20 L.Ed.2d 255 (1968). *Barber v. Page* involved a situation where the petitioner's co-defendant waived self-incrimination and incriminated the petitioner in testimony at a preliminary hearing. When the petitioner was later tried, the co-defendant was in federal custody outside of the state where the prosecution was taking place, and the prosecution introduced the transcript from the preliminary hearing, making no effort to seek the co-defendant's presence at trial. The Supreme Court disapproved the historical rule that the absence of a witness from the trial jurisdiction was enough to avoid any lack of confrontation issue since the court was without power to compel his attendance in such a case. The Court stated:

Whatever may have been the accuracy of that theory at one time, it is clear that at the present time increased cooperation between the States themselves and between the States and the Federal Government has largely deprived it of any continuing validity in the criminal law. [Footnote omitted]. For example, in the case of a prospective witness currently in federal custody, 28 U.S.C. § 2241(c)(5) gives federal courts the power to issue writs of *habeas corpus ad testificandum* at the request of

---

3. The Court visualized the writ's use by the district court in the demanding state to obtain the petitioner's presence in that court for a hearing if one should be necessary.

state prosecutorial authorities. See *Gilmore v. United States,* 129 F.2d 199, 202 (C.A. 10th Cir. 1942); *United States v. McGaha,* 205 F.Supp. 949 (D.C.E.D.Tenn.1962).[4] 390 U.S. at 723–24, 88 S.Ct. at 1321. The Court went on to state that it was now the *policy* of the Bureau of Prisons to allow federal prisoners to testify in state criminal trials pursuant to writs of *habeas corpus ad testificandum* issued by state courts. In this connection the federal district court in *Curran v. United States,* 332 F.Supp. 259 (D.Del.1971), denied a state defendant's request for a writ of *habeas corpus ad testificandum* to produce a federal prisoner outside of Delaware, finding that the application should have been addressed to the state court since the state court had knowledge of the need for the presence of the proposed witness. *Curran* cited *Barber* and then stated:

> From the extracts of the quoted decision, two underlying principles may be deduced. No sovereign power may interfere with, or lay claim to, the custody of a prisoner legally incarcerated in the jails of another sovereign power, except that upon a proper showing, and as a matter of comity, one sovereign power will permit another sovereign power to have temporary custody of a prisoner then in the jails of the former either to stand trial, or testify in a trial to be conducted in the Courts of the latter.

332 F.Supp. at 261. *Curran* thus notes that because of comity and cooperation between federal and state governments, a prisoner will be delivered by the federal authorities at the request of a state court. This does not necessarily mean that the state court would have the *power* to order the production of the federal prisoner as a witness where he is incarcerated outside of the state absent such comity. *Curran* emphasizes the policy considerations of *Barber* with respect to

state/federal cooperation in criminal matters. These are similar to the policy considerations earlier relied upon in *Carbo.*

There is also another line of cases subsequent to *Carbo* interpreting it somewhat differently than did *Word, McGaha,* and *Duncan.* In *Yager v. Raisor,* 211 F.Supp. 551 (S.D.Ind.1962), the court was dealing with a case very similar to the present one. A prisoner-plaintiff was suing in a civil action for damages for the violation of his civil rights and he attempted to obtain a writ of *habeas corpus ad testificandum* from an Indiana federal district court ordering the warden of the state prison in Kentucky where he was incarcerated to deliver him to Indiana so he could testify in and prosecute his action. The court noted that *Carbo* expressly withheld decision on the question of whether the writ of *habeas corpus ad testificandum* could be issued extraterritorially and adhered to the earlier Seventh Circuit decision in *Edgerly v. Kennelly,* 215 F.2d 420 (7th Cir. 1954). In *Silver v. Dunbar,* 264 F.Supp. 177 (S.D.Cal.1967), the court was also faced with a petition by a prisoner-plaintiff for a writ of *habeas corpus ad testificandum* in a civil action for damages to bring him to court. The court in *Silver* noted the decisions in *Duncan* and *McGaha* and found their reliance on *Carbo* misplaced "because the court in *Carbo* specifically refused to decide whether the writ of *habeas corpus ad testificandum* was intended by Congress to be subject to the territorial limitation." *Id.* at 179. *Silver* also felt that the major basis for the Supreme Court's decision in *Carbo* was its feeling of a "need for comity in the administration of criminal justice and upon provisions authorizing extraterritorial process in criminal matters." *Id.*

This court notes that in all of the cases set forth above where the writ of *habeas corpus ad testificandum* was al-

---

4. This court notes that neither *Gilmore* nor *McGaha* stands for the proposition for which they were cited. Both involved federal criminal actions where federal prisoners incarcerated outside the court's jurisdiction were sought as witnesses.

lowed to be issued extraterritorially, the cases involved obtaining witnesses for use in *criminal trials,* and all except *Barber v. Page, supra,* dealt with a situation where it was the defendant who was seeking witnesses for his defense. In situations such as these there exists another overriding factor which is not present in a civil case such as the case *sub judice*—that is the sixth amendment right that "[i]n all criminal prosecutions, the accused shall enjoy the right . . . to have compulsory process for obtaining witnesses in his favor. . . ." This constitutional right standing alone would probably be sufficient to vest a district court with the power to issue extraterritorial writs of *habeas corpus ad testificandum* in proper cases where the defendant *in a criminal trial* has a genuine need for a prisoner-witness who is at that time incarcerated outside of the district. There is also another factor present in the case of criminal proceedings which is not present in civil actions—that is the power of the courts to issue subpoenas unlimited by jurisdictional limitations pursuant to Fed.R.Crim.P. 17(e). As noted above, this authorization of extraterritorial process by Fed.R.Crim.P. 4 and 17 affected the Supreme Court's decision in *Carbo,* 364 U.S. at 620, 81 S.Ct. 338. Even before the question of the possible extraterritorial reach of writs of *habeas corpus ad testificandum* pursuant to 28 U.S.C. § 2241 was ever raised in a context similar to *Carbo,* the courts had generally considered that its power to issue such writs in criminal cases was inherent in the court because of its subpoena power under rule 17 and because of the sixth amendment right to compulsory process. *See Gibson v. United States,* 53 F.2d 721 (8th Cir. 1931); *Neufield v. United States,* 73 U.S.App. D.C. 174, 118 F.2d 375 (1941); *Murdock v. United States,* 283 F.2d 585

(10th Cir. 1960) [5]; *United States v. Rigdon,* 459 F.2d 379 (6th Cir. 1972). *Cf. United States v. Plemons,* 455 F.2d 243 (10th Cir. 1972). Contrast this subpoena power under Fed.R.Crim.P. 17(e) with the subpoena power granted the court in civil actions under Fed.R. Civ.P. 45(e) which limits the reach of service of the subpoena to "any place within the district, or at any place without the district that is within 100 miles of the place of the hearing or trial specified in the subpoena . . . ." This adds support to the argument that the power to issue writs of *habeas corpus ad testificandum* should not extend extraterritorially in civil actions.

There is some scant authority that the writ of *habeas corpus ad testificandum* is applicable and can be issued extraterritorially in civil cases. In the case of *In re Thaw,* 166 F. 71 (3rd Cir. 1908), the district court in Pittsburgh initially granted the writ directing the director of a hospital for the criminally insane in New York to produce Thaw in Pittsburgh before the bankruptcy court so he could be present for a creditor's meeting. The court later quashed the writ on other than jurisdictional grounds, and on appeal the court of appeals dealt with the case only on the point that the granting and thus the quashing of the writ was discretionary with the court. In doing so, however, the court certainly considered that the district court had acted within its jurisdiction. In *Underwood v. Maloney,* 15 F.R.D. 104 (N.D.N.Y.1954), the district court in the district where a party to civil litigation was incarcerated was reluctant to allow the taking of the prisoner's deposition under Fed.R.Civ.P. 26(a). The court was reluctant because Professor Moore in his treatise stated that the court has the same power to compel the attendance at a deposition as it has to compel attendance at trial and because

---

5. Murdock did not mention specifically its power under rule 17 but cited *Reistroffer v. United States,* 258 F.2d 379 (8th Cir. 1958), as authority for its discretion in granting the writ, and *Reistroffer* involved a rule 17 subpoena for a witness who was not a prisoner.

Moore further uses *In re Thaw* as authority for the proposition that a federal court can compel a state to bring a prisoner before it. The *Underwood* court felt that if the trial court had jurisdiction to compel the prisoner's presence at trial, it would have the power to grant the taking of the deposition. To the extent that these two cases constitute authority for the power of a federal district court to grant a writ of *habeas corpus ad testificandum* extraterritorially in other than a criminal case, this court feels that the caveat in *Carbo* and the reasoning in *Edgerly v. Kennelly, supra,* and *Silver v. Dunbar, supra,* effectively overrules them in an implicit manner and state the better reasoned views. Absent some other statutory grant, this court can conceive of no reason why the court should have greater power to compel the attendance of a witness merely because of the fact that the potential witness happens to be incarcerated than it has to compel the attendance of any other witness at a civil trial.

■ With the Supreme Court's strong reliance in *Carbo* on the need for cooperation and comity between the state and federal governments in the administration of the criminal justice system; with its reference to *McGaha* (which involved a criminal prosecution) in *Barber* in the context of obtaining witnesses for a criminal prosecution; with the distinction between the court's power to issue subpoenas in criminal *vis-a-vis* civil actions; with the Supreme Court's express caveat with respect to the writ of *habeas corpus ad testificandum,* and in the absence of any sixth amendment right to compulsory process in civil cases, this court feels that federal district courts are without the power to issue writs of *habeas corpus ad testificandum* to reach outside of its jurisdiction to bring a prisoner-plaintiff or his desired witnesses into court in this district to testify and/or prosecute his case in a civil action for monetary damages.

## IF THIS COURT HAD THE POWER TO GRANT THE WRIT IN A CIVIL CASE, IT WOULD NOT EXERCISE ITS DISCRETION IN THE CASE SUB JUDICE

■ It is well settled that the granting of a *habeas corpus ad testificandum* lies within the discretion of the court. *United States v. Lupino, supra; United States v. Goldenstein, supra; Gilmore v. United States, supra; Murrey v. United States, supra; In re Thaw, supra.* In the present case the plaintiff desires to have this court produce him and another prisoner as a witness at government expense. Plaintiff is incarcerated in Missouri, which is far removed from this court, and his witness is incarcerated in Reidsville, Georgia, which is well over 200 miles from the court in Gainesville. This court is in agreement with a passage from the case in *Silver v. Dunbar, supra,* which is quite appropriate to the present case.

Here it would be both expensive and inconvenient to have petitioner present in the courtroom. It would be necessary to transport petitioner several hundreds of miles from Deuel Vocational Institution and back again. Arrangements would have to be made for custody in local jail facilities. Guards would be required both during transportation and during courtroom appearances. The costs of these arrangements could be substantial, and they would not appear to be properly chargeable against either the United States or the State of California [here Georgia], because petitioner's actions are civil in nature.

Moreover, petitioner's appearance in the courtroom could be potentially dangerous. He is the man who is presently imprisoned under convictions for attempted murder and escape from prison. His presence in the courtroom could be a danger both to persons present in the courtroom and to the public at large.

These factors would be sufficient to warrant denial of a writ even in a

case involving the life and liberty of the petitioner. They present even stronger reasons for denial where, as here, the petitioner seeks a writ for the purpose of prosecuting and testifying in a civil action for damages. 264 F.Supp. at 181. Other courts have reached the same conclusion using much the same reasoning. *Seybold v. Milwaukee County Sheriff,* 276 F.Supp. 484 (E.D.Wis.1967); *Murrey v. United States,* 138 F.2d 94 (8th Cir. 1943). Accordingly, if this court had the power to issue the writ extraterritorially in this case, it would refuse to so exercise its discretion.

FEDERAL FUNDS ARE NOT AUTHORIZED TO TRANSPORT, GUARD, HOUSE, AND FEED A PRISONER–PLAINTIFF AND A PRISONER–WITNESS IN A CIVIL SUIT FOR DAMAGES

 This court can find no basis in the law for the expenditure of federal funds to underwrite a private civil damage action as plaintiff requests. As the Fifth Circuit stated in *Beard v. Stephens,* 372 F.2d 685 (5th Cir. 1967): "The granting of leave to proceed *in forma pauperis* does not carry with it any such affirmative assistance [here the appointment of an officer of the court to aid in the taking of depositions] from the court in the conduct of this civil case." *Id.* at 690. Specifically, it has been held that there are no federal funds available to pay for the transportation of a prisoner-plaintiff from his place of incarceration to court to either "prepare for trial, appear at trial or pre-trial proceedings, or for any other purpose." *Diaz v. Chatterton,* 229 F.Supp. 19, 23 (S.D.Cal.1964). *See also Seybold v. Milwaukee County Sheriff,* 276 F.Supp. 484 (E.D.Wis.1967); *Urbano v. Sondern,* 41 F.R.D. 355 (D. Conn.1966); *cf. Ebenhart v. Power,* 309 F.Supp. 660 (S.D.N.Y.1969).

The only authority cited by plaintiff in support of having federal funds expended to underwrite his case is *Allison v. Wilson,* 277 F.Supp. 271 (N.D.Cal. 1967). Specifically, he relies on the statement: "Appointment of counsel to an indigent incarcerated plaintiff in a civil action implicitly authorizes the commitment of federal funds to underwrite necessary expenditures." *Id.* at 275. This statement has been recognized as dicta, *Tyler v. Lark,* 472 F.2d 1077, 1078 (8th Cir. 1973), and it has been rejected as an unsound theory. *Dreyer v. Jalet,* 349 F.Supp. 452 (S.D. Tex.1972). This court also disagrees with the theory as untenable. The taxpayers of this nation should not be burdened with the cost of underwriting the expenses of a civil lawsuit in which the plaintiff seeks substantial monetary damages absent some express statutory authority requiring it. This is especially true in light of what seems to be a growing trend of civil rights suits filed by prisoners against wardens, guards, parole officers, and law enforcement personnel.

For the foregoing reasons, the plaintiff's motion to compel his production and also the production of Vernon Rouse, Jr. as a witness in his behalf at trial at government expense is denied.