Rodney R. HAYMES, Individually and on Behalf of all others similarly situated, Plaintiffs,

v.

Harold SMITH, Individually and in his official capacity as Superintendent of Attica Correctional Facility, et al., Defendants.

No. Civ–74–221.

United States District Court, W. D. New York.

Dec. 20, 1976.

David W. Beier, III, Monroe County Legal Assistance Corp., Rochester, N. Y., for plaintiffs.

Louis J. Lefkowitz, Atty. Gen., State of New York, New York City (Douglas S. Cream, Buffalo, N. Y., of counsel), for defendants.

CURTIN, Chief Judge.

This is the most recent in a series of motions brought by plaintiffs in their efforts to obtain discovery in this action

which asserts the rights of inmates to organize for collective action within a correctional institution and which challenges the validity of procedures followed relative to transfers of plaintiff Rodney Haymes, allegedly for his participation in such organizing activities. The discovery process has been extended over a very lengthy period, having been initiated by plaintiffs in July 1974.

With the court's approval, counsel for the parties have agreed that plaintiffs will depose defendant Smith at the Attica Correctional Facility, his place of employment, at the convenience of the parties. Plaintiffs will also depose defendant Ward at his place of employment in Albany, New York.

Plaintiffs have now moved the court for an order to compel the defendants to pay the reasonable expenses that would be incurred by plaintiffs in deposing defendant Montanye, who presently resides in Florida. In addition, plaintiffs request a ruling that would permit plaintiffs, in the course of deposing defendant Smith, to inquire into matters which would otherwise be covered by the attorney-client privilege.

■ It is widely recognized that the district courts can provide for payment in the first instance of the expense of taking depositions (under former Rule 30(b) of the Federal Rules of Civil Procedure and under present Rule 26). *See* Moore's Federal Practice, Vol. 4, ¶ 26.77 (1976); *Perry v. Edwards*, 16 F.R.D. 131 (W.D.Mo.1954). Such a determination as to which party shall pay transportation and related expenses incurred in the course of deposing an individual rests in the court's sound discretion. *Gibson v. International Freighting Corp.*, 8 F.R.D. 487 (E.D.Pa.1947), *aff'd* 173 F.2d 591 (3d Cir. 1949). The facts and circumstances of each individual case determine how the court will exercise this discretion. *Sowers v. General Motors Corp.*, 16 F.R.D. 562 (E.D.Pa.1954).

The following factors would suggest that the court should exercise its discretion in favor of the plaintiffs:

■ (1) On May 7, 1974 I ordered that plaintiff Rodney Haymes be allowed to proceed in forma pauperis pursuant to 28 U.S.C. § 1915(a). The generally recognized rule is that a court may not authorize the commitment of federal funds to underwrite the necessary expenditures of an indigent civil litigant's action. *Tyler v. Lark*, 472 F.2d 1077 (8th Cir. 1973); *Sturdevant v. Deer*, 69 F.R.D. 17 (E.D.Wis.1975); *Clark v. Hendrix*, 397 F.Supp. 966 (N.D.Ga.1975); *Ebenhart v. Power*, 309 F.Supp. 660 (S.D.N.Y.1969); *Diaz v. Chatterton*, 229 F.Supp. 19 (S.D.Cal.1964); *cf., Allison v. Wilson*, 277 F.Supp. 271 (N.D.Cal.1967). The indigent civil litigant is thus usually without adequate resources to finance the costs of prosecuting an action that may have merit. Plaintiffs in this action, consisting of Mr. Haymes and the class of Attica inmates interested in organizing collectively, are such indigent litigants.

(2) Plaintiffs' counsel, the Monroe County Legal Assistance Corporation, has indicated that it has only $900.00 available annually to pay for court costs (affidavit of May 20, 1976 of David C. Leven, Executive Director). Were plaintiffs' counsel required to finance the costs of the deposition contemplated here, they would be required to expend approximately one-third of their entire annual court-costs budget in this single action. (Affidavit of May 20, 1976 of David W. Beier III, at 4).

It is true, as the Assistant Attorney General has pointed out, that plaintiffs' counsel has considerable funds available in its general operating fund (in excess of $200,000 annually). However, plaintiffs' counsel has other cases to attend to and should not be forced to finance this particular lawsuit on behalf of indigent plaintiffs.

(3) It is important that the deposition of Ernest L. Montanye, Assistant Deputy Commissioner of Correctional Services at the time of the alleged organizing efforts and transfers, be taken so that his role during the course of these activities may be clarified. His deposition is necessary to assure that this matter is fully and fairly litigated.

(4) As I indicated during the May 7, 1976 meeting with counsel, written interrogatories are not an adequate substitute for actual depositions in this matter. Only through oral deposition can counsel explore all of the nuances of defendant Montanye's actions which are relevant to this litigation.

■ It is true that the general rule requires that a party seeking to take a deposition must bear the expense associated with taking the deposition. However, this is not the usual case as the suit was initiated by a pro se complaint of an indigent prisoner.

Important first amendment and fourteenth amendment due process and equal protection issues have been raised by plaintiffs' complaint. While the Supreme Court's decisions in *Meachum v. Fano*, 427 U.S. 215, 96 S.Ct. 2532, 49 L.Ed.2d 451 (1976), and *Montanye v. Haymes*, 427 U.S. 236, 96 S.Ct. 2543, 49 L.Ed.2d 466 (1976), may have mooted some of the issues raised by plaintiff Haymes with respect to aspects of the challenged transfers, these decisions are not determinative of other elements of plaintiffs' action. In *Meachum v. Fano, supra,* and *Montanye v. Haymes, supra,* no disciplinary punishment or segregated confinement accompanied the contested transfers. In this action, plaintiff Haymes has alleged that, because of his union-organizing activities, he was placed in solitary confinement upon his arrival at Clinton Correctional Facility on April 18, 1974, without any sort of hearing, and remained so confined during the nine days prior to being transferred to Greenhaven Correctional Facility. *See Wolff v. McDonnell*, 418 U.S. 539, 94 S.Ct. 2963, 41 L.Ed.2d 935 (1974).

■ Weighing all of the above factors, I have concluded that the only way to provide for the necessary deposing of defendant Montanye is to require in this instance that defendants bear the costs incident to the deposition. In this regard, I direct that the following actions be taken:

(1) Counsel for defendant Montanye shall contact his client to determine if Mr. Montanye anticipates being in the Western New York area within 120 days of the date of this order. Counsel shall report back to the court within 10 days of this order as to his efforts in this regard. If defendant Montanye expects to be in Western New York before March 15, 1977, his deposition may be taken at any time during his stay convenient to all.

(2) If defendant Montanye does not expect to be in Western New York during the next 120 days for reasons not related to this litigation, I direct that defendant Montanye be deposed by plaintiffs' counsel at the United States Court House, 68 Court Street, Buffalo, New York, no later than March 15, 1977. Since this court has personal jurisdiction over the defendant Montanye, there is no barrier to my ordering that Mr. Montanye come to this district to give his deposition. *See* Federal Rules of Civil Procedure, Rule 37; Moore's Federal Practice, Vol. 4, ¶ 26.77; *Tomingas v. Douglas Aircraft Co.,* 45 F.R.D. 94 (S.D.N.Y. 1968). Defendant Montanye will be required to pay his own reasonable traveling expenses for the trip to Buffalo. *See Sowers v. General Motors Corp., supra.* Defendant may apply to the court at the conclusion of this litigation to have said amounts, expended for travel, taxable as disbursements in the event that defendant recovers the costs of this action. *See* Fed. R.Civ.P., Rule 54(d); *Moore v. George A. Hormel & Co.,* 4 F.R.D. 15 (S.D.N.Y.1942); *United States v. Vitasafe Corp.,* 9 F.R. Serv.2d 54d. 143, case 1 (S.D.N.Y.1965).

(3) In the alternative, defendants shall advance to plaintiffs' counsel the reasonable travel expenses that will be incurred by plaintiffs in deposing defendant Montanye at his residence or place of employment in Florida. If defendants choose to have Mr. Montanye deposed in Florida, such deposition shall be taken no later than March 15, 1977. Defendants' counsel shall bear his own travel expenses if defendants choose this alternative.

Plaintiffs have also asked the court to rule as to the propriety of inquiries, directed to defendant Smith, which might otherwise be prohibited by the attorney-client privilege. These questions are primarily

concerned with the source and extent of defendant Smith's knowledge of the legal status of inmate labor union organizing.[1]

■ The general rule is that communications made by a client to his attorney for the purpose of seeking professional advice, as well as the responses by the attorney to such inquiries, are privileged communications not subject to disclosure. *See Colton v. United States*, 306 F.2d 633 (2d Cir. 1962), *cert. den.*, 371 U.S. 951, 83 S.Ct. 505, 9 L.Ed.2d 499 (1963); *Leonia Amusement Corp. v. Loew's*, 13 F.R.D. 438 (S.D.N.Y. 1952); *Buckley v. Vidal*, 50 F.R.D. 271 (S.D. N.Y.1970); New York C.P.L.R. § 4503.

■ However, because the attorney-client privilege limits full disclosure of the truth, it must be narrowly construed [*Underwater Storage, Inc. v. United States Rubber Co.*, 314 F.Supp. 546, 547 (D.D.C. 1970)] and the privilege will be recognized only if it is not waived by the client. *Id.* at 548; *International Tel. & Tel. Corp. v. United Tel. Co. of Fla.*, 60 F.R.D. 177, 185 (M.D. Fla.1973).

■ I have concluded that defendant Smith has waived the attorney-client privilege by the following actions:

(1) On April 21, 1976 defendants produced for plaintiffs' use a letter from defendant Smith addressed to Mr. William Donnino, "Deputy Commissioner of Counsel", dated March 27, 1974. That correspondence sought guidance as to the legality of subjecting inmates to disciplinary proceedings "for getting signatures on membership forms for a prisoners labor union."

■ If a party-client chooses to disclose part of an otherwise privileged communication directed to his legal counsel, then he waives the privilege and the production of all the correspondence or the remainder of the consultations about the same subject can be demanded. *International Tel. & Tel. Corp. v. United Tel. Co. of Fla., supra*, at 185, *citing Kunglig Jarnvagsstyrelsen v. Dexter & Carpenter*, 32 F.2d 195 (2d Cir. 1929); *In re Penn Central Commercial Paper Litigation*, 61 F.R.D. 453 (S.D.N.Y.1973) (recognizing that a claim of privilege cannot be selectively waived).

1. Plaintiffs have asked the court to rule on the following inquiries:

Interrogatory No. 33:
What basis did you plan on using at trial to prove that your acts were performed in a reasonable belief that no constitutional rights were infringed relative to your acts or omissions towards the plaintiff Haymes?

Interrogatory No. 54:
Prior to March 20, 1974 were you aware of any litigation involving the establishment of prisoners unions within the New York State prisons?

a) If so, how and under what circumstances did you obtain such information?

b) Did you receive any memoranda or other written material from either the Central office or any member of the New York State Attorney General's office on this question?

i. When did you first learn of the Appellate Division, Second Department decision in *Matter of Prisoners Labor Union* at Bedford Hills?

c) If the answer to (b) above is affirmative, please reiterate the contents of such communications or provide copies thereof.

Interrogatory No. 84:
At the time of the transfer were you aware of Haymes previous statements about Clinton relative to his ability to seek rehabilitation there and his objections to the distance of the facility from his family and attorneys?

a) If you were involved in said decision, did you or anyone else involved in the decision consult with an attorney to obtain a legal opinion on the propriety of such a transfer?

i. If so, who was consulted, and what advice if any was rendered?

b) At the time of the transfer were you aware of the existing status of the law on the subject of inmates rights to due process type hearings prior to transfers?

i. If so, what was your understanding?
Additional inquiries:

(a) What discussions did you have with Mr. William Donnino, or any other attorney in his office, on or after March 27, 1974 concerning the legality of inmate labor union organizing?

(b) What was the sum and substance of such conversations?

(c) Did you ever receive any specific instructions or advice from any attorney, either employed by the Department of Correctional Services, or the Attorney General's Office, with respect to the legal necessity of using the disciplinary process to deal with inmates who were "getting signatures on membership forms for a prisoner labor union"?

(d) If you did receive such advice, how and when did you receive such advice?

(e) What was the nature of such advice, if any?

By disclosing the above-referenced correspondence to Mr. Donnino, who was apparently defendant Smith's source or liaison for legal advice in this matter, defendant Smith has waived the attorney-client privilege with respect to communications involving this subject matter. This waiver allows the plaintiffs to inquire into the remainder of the consultations that defendant Smith may have had with counsel or counsel's representatives on this subject.

 (2) The attorney-client privilege may also be waived if the privileged communication is injected as an issue in the case by the party which enjoys its protection. *Garfinkle v. Arcata National Corp.*, 64 F.R.D. 688, 689 (S.D.N.Y.1974). By asserting the affirmative defense that "the acts alleged by plaintiff as against defendant Smith were acts performed in the reasonable belief that no constitutionally protected right of plaintiff was being infringed," defendant Smith has placed in issue information that might otherwise be protected by the privilege. This information includes legal advice that defendant Smith may have received from counsel with respect to inmate labor union organizing and with respect to the appropriateness of responses that might be made by him in the face of such activity. To allow defendant to avoid disclosure of such information would deprive plaintiffs of information needed by them to respond to defendant Smith's affirmative defense. *See Hearn v. Rhay*, 68 F.R.D. 574, 581 (E.D.Wash.1975). I therefore find that I agree in this instance with the conclusion in *Hearn v. Rhay*, *supra*, that

> defendants impliedly waived the right to assert the attorney-client privilege with respect to any legal advice or confidential communications with [counsel] that relate to the issues of malice toward plaintiff or knowledge of plaintiff's constitutional rights. [*See Wood v. Strickland*, 420 U.S. 308, 321–322, 95 S.Ct. 992, 43 L.Ed.2d 214 (1975)]. . . . [D]ue to the nature of this suit, which puts the legal advice defendants received directly in issue, the policy behind the privilege is outweighed

by the necessity of disclosure and the privilege is inapplicable. *Id.* at 583.

Defendant Smith is directed to respond, upon oral deposition, to those inquiries by plaintiffs that are enumerated as Interrogatories 33 and 54 (and subparts therein). Defendant Smith shall also respond to inquiries with respect to his consultations with Mr. William Donnino that are referred to above. Only subparts (a) and (a)(i) of Interrogatory 84 are appropriate inquiries since the other questions under # 84 have been mooted by *Meachum v. Fano* and *Montanye v. Haymes, supra.*

Counsel for both sides are directed to complete discovery as soon as possible, and within the time limits set by the court, so that this matter may be brought on for trial.

So ordered.