Earnest BALL, Plaintiff,

v.

Larry WOODS et al., Defendants.

Earnest BALL, Plaintiff,

v.

Dr. SHAMBLIN et al., Defendants.

Earnest BALL, Plaintiff,

v.

John DWYER et al., Defendants.

Earnest BALL, Plaintiff,

v.

HOLMAN PRISON OFFICIALS et al., Defendants.

Civ. A. Nos. 74–P–1199–W, 75–P–0155–W, 75–P–0549–W and 75–P–2078–W.

United States District Court, N. D. Alabama, W. D.

Nov. 4, 1975.

George Woodruff Harris, Birmingham, Ala., for plaintiff in No. 74–P–1199–W.

Earnest Ball, pro se in Nos. 75–P–0155–W, 75–P–0549–W and 75–P–2078–W.

J. Wagner Finnell, Glenn N. Baxter, Tuscaloosa, Ala., for defendants in No. 74–P–1199–W.

Wayne L. Williams, Zeanah, Donald, Lee & Williams, Tuscaloosa, Ala., for defendants in No. 74–0155–W.

Martin Ray, Tuscaloosa, Ala., for defendants in No. 75–P–0549–W.

No appearance for defendants in No. 75–P–2078–W.

## MEMORANDUM OF OPINION

POINTER, District Judge.

Earnest Ball, presently serving a life sentence in Alabama's Holman prison, has filed in this court three civil actions for damages under 42 U.S.C.A. § 1983. One (CA 74–1199) charges that unreasonable force was used by Tuscaloosa city policemen in effecting his arrest in connection with a domestic squabble, a struggle during which one of the arresting officers was killed by Ball with a shotgun. A second (CA 75–155) asserts that a treating physician gave Ball inadequate treatment for injuries he subsequently sustained during that arrest. His third case (CA 75–549) alleges that he was mistreated by Tuscaloosa county jail officials while awaiting trial for murder of the policeman, the offense of which he was subsequently convicted and for which he received his present sentence. None of the actions, it will be noted, challenges the validity or conditions of his present incarceration.

After allowing Ball to file these actions in forma pauperis, the court made requests of several lawyers to undertake representation of Ball. A willing attorney was finally located by the Magistrate; but he, after investigation, asked that his representation be limited to the case challenging the force used in Ball's arrest. That request was granted, with the other two cases thereafter being docketed as *pro se*.

In the "malpractice" case, the court granted defendant's motion for summary judgment, concluding that the action was barred by Alabama's one-year statute of limitations, which, by analogy, would apply to a federal civil rights claim of a similar nature.[1] Ball, *pro se*, has filed a notice of appeal from this decision, asking that he be allowed to proceed in forma pauperis and that an attorney be appointed to represent him. By separate order the court has noted that his status as a pauper continues under F.R.A.P. 24(a),[2] but has denied the request for appointment of counsel.

Case 74–1199, the "arrest" case in which Ball is represented by counsel, has been scheduled for trial in Tuscaloosa on a docket commencing November 10, 1975. Upon publication of the docket, Ball's attorney filed a motion to have Ball present for the trial and hence available to give testimony in person in the case. It seeks an order directing the U. S. Marshal to bring Ball to federal court in Tuscaloosa for the trial, with the expenses of this transportation and custody being taxed as court costs—meaning that these expenses would be ultimately borne by the United States should Ball be unsuccessful, or by the defendants should he be successful, in his suit.

Though not so labelled, the motion is to be treated as a petition for a writ of habeas corpus ad testificandum, to be directed to state prison officials at Holman, an institution located outside this judicial district and, indeed, more than 100 miles from any place for holding court in this district. The court is called upon to answer several questions: Does it have power to grant the petition? If so, must it grant the petition? If discretion is involved, what factors or circumstances should be taken into consideration? If Ball is not to be brought to court for the trial, what action should be taken with respect to further proceedings in the case—and, indeed, does an an-

---

1. The other two cases involve a six-year statute of limitations and, accordingly, are not barred. Note that Alabama's "tolling" statute, title 7, § 36, not only does not apply with respect to life sentences, but also is inap-

plicable where, as here, a cause of action accrued prior to the sentence of imprisonment.

2. There is no reason for the court to conclude that the appeal is not being taken in good faith. Cf. F.R.A.P. 24(a).

swer to this question affect the answer to the preceding questions?

The motion is filed only in the "arrest" case. However, it is obvious that similar problems will arise with respect to further proceedings in Ball's "jail" case, in which he is not represented by counsel. Moreover, since very few decisions have been published in recent years despite the recurring nature of this type of issue, an opinion of greater than normal length and detail seems appropriate.

## DISCUSSION

■ Federal courts "may issue all writs necessary or appropriate in aid of their respective jurisdictions and agreeable to the usages and principles of law." 28 U.S.C. § 1651 (1964 ed.) (All Writs Statute). This section empowers, for example, an appellate court to require production of a prisoner to argue personally the appeal of a case involving his life or liberty, even though such a writ was not known at common law. *Price v. Johnston*, 334 U.S. 266, 68 S.Ct. 1049, 92 L.Ed. 1356 (1948).[3]

In the present case the court is not dealing with the All Writs Statute,[4] but rather with a petition for habeas corpus of a form (*ad testificandum*) which

was recognized at common law,[5] and which, at least by implication, is covered by federal statute.[6] But if such writ is provided for by statute, it is also presumably subject to the limitations contained by that statute; namely, that it may be granted by "the district courts * * * within their respective jurisdictions." At the outset, then, it is necessary to determine whether the state prison officials at Atmore, Alabama, are within the jurisdiction of this court, Atmore being outside this district and more than 100 miles from any place for holding court in this district.

■ Under a 1948 decision of the Supreme Court, issuance of writs under this statute was held limited to situations where the prisoner was within the territorial boundaries of the court. *Ahrens v. Clark*, 335 U.S. 188, 68 S.Ct. 1443, 92 L.Ed. 1898 (1948). Years later, but apparently in response to *Ahrens*, the habeas corpus statutes were amended to permit the petition to be filed in a multi-district state not only in the district of confinement, but also in the district in which the sentencing court was located. See 28 U.S.C. § 2241(d), adopted 1966. Facially, this subsection appears to give this court jurisdiction

---

3. There was no question in *Price* as to territorial jurisdiction of the court, since *Price* was in fact confined at an institution within the court's jurisdiction. Nor, indeed, since this request was considered as beyond the scope of common law habeas corpus (being only "in the nature of" a writ of habeas corpus), would the court have been confronted with territorial limitations specified in the habeas corpus statutes.

4. In the 1940 edition of the Judicial Code, the All Writs Statute was limited in scope to "writs not specifically provided for by statute". The subsequent omission of this phrase was apparently considered as mere change in phraseology in view of the continuing limitation that issuance be "agreeable to the usages and principles of law."

5. See *Price v. Johnston*, *supra*, 334 U.S. at 281, 68 S.Ct. 1049. The questions for this court are, of course, ones of federal law. However, it may be noted that in the state courts of Alabama the *ad testificandum* writ

of common law has been abolished for civil cases in view of other means for securing testimony of imprisoned persons, at least where the witness is other than a party. See *Ex parte Brown*, 206 Ala. 528, 91 So. 306 (1921), *aff'g, State v. Brown*, 18 Ala. App. 205, 89 So. 862 (1921). The method for obtaining such testimony in the state courts has recently been modified by provisions of the Alabama Rules of Civil Procedure, modeled after the F.R.Civ.P. See Appendix II to the A.R.C.P.

6. The writ of habeas corpus "shall not extend to a prisoner unless * * * (5) it is necessary to bring him into court to testify or for trial." 28 U.S.C. § 2241(c). The word "necessary" when used in the analogous All Writs Statute (even before insertion in such Statute of the additional words "or appropriate") has not been interpreted so narrowly as to require a showing that otherwise it would be impossible for the court physically to discharge its duties. See *Price v. Johnston*, *supra*, 334 U.S. at 279, 68 S.Ct. 1049.

to grant Ball's petition. However, the legislative history seems clear that the amendment was intended to deal with the typical habeas action,[7] that is, where the prisoner is challenging the legality of his confinement, and not with the *ad testificandum* variety, where the district of the sentencing court may have no connection either with the custody of the prisoner or with the action where the prisoner's testimony is desired.

In any event, the Supreme Court has subsequently determined that writs may be issued under 28 U.S.C. § 2241(a) "so long as the custodian can be reached by service of process". *Braden v. Kentucky*, 410 U.S. 484, 495, 93 S.Ct. 1123, 1130, 35 L.Ed.2d 443 (1973).[8] Here, the Holman prison officials are within the range of the process powers of this court, F.R.Civ.P. 4(f); and, accordingly, the court concludes that it does have jurisdiction to grant the writ requested by Ball.

Must that power, however, be exercised by the court on the prisoner's application?

In cases challenging the validity of confinement in which there are material factual disputes as to events in which the prisoner participated, the Supreme Court has all but mandated the presence of the prisoner. See *Walker v. Johnston*, 312 U.S. 275, 285, 61 S.Ct. 574, 85 L. Ed. 830 (1941) (habeas corpus); *United States v. Hayman*, 342 U.S. 205, 222, 72 S.Ct. 263, 96 L.Ed. 232 (1952) (28 U.S.C. § 2255). These decisions were in essence grounded upon principles of statutory construction and policy, rather than constitutional requirements; and, as noted, they dealt with situations involving the

very legality of incarceration. Nor was the court called upon to determine the efficacy of other forms of testimony, such as depositions, as contrasted to presentation by affidavits.

In civil actions not involving the validity or conditions of confinement, however, those courts with which the question has been raised have, without exception, concluded that a prisoner-party has no absolute right to be present and give testimony in person. Thus, in *Edgerly v. Kennelly*, 215 F.2d 420 (CA 7 1954), the Court of Appeals ruled that the prisoner-plaintiff, in a case quite similar to Ball's, had no constitutional right to production at a trial of his case and that, indeed, it was proper for the trial court to dismiss the case, apparently with prejudice, for want of prosecution when the case was called for trial.[9] In so holding, the appellate court stated:

"It must be remembered that a person in his unfortunate situation is stripped of many of the rights possessed by a free person and guaranteed by the Constitution. As stated in *Price v. Johnston*, 334 U.S. 266, 285, 68 S.Ct. 1049, 1060, 92 L.Ed. 1356: 'Lawful incarceration brings about the necessary withdrawal or limitation of many privileges and rights, a retraction justified by the considerations underlying our penal system.'" 215 F.2d at 423.

A similar decision has been reached by the Ninth Circuit in *McKinney v. Boyle*, 447 F.2d 1091 (CA 9 1971). See also *Armstrong v. Rushing*, 352 F.2d 836 (CA 9 1965), where a distinction is made between appearing in court, on the one hand, and a right to file, to receive

---

7. The legislative history of the 1966 amendment should be read in the context of the development of the statutory scheme respecting *habeas* writs. For such prior history, see *Carbo v. U. S.*, 364 U.S. 611, 81 S.Ct. 338, 5 L.Ed.2d 329 (1964).

8. In *Carbo v. U. S.*, 364 U.S. 611, 81 S.Ct. 338, 5 L.Ed.2d 329 (1964), it was held that not all writs of habeas corpus were limited by the jurisdictional restrictions of 28 U.S.C. §

2241(a). However, the court expressly pretermitted deciding whether *ad testificandum* writs were so limited. See 364 U.S. at 618, n. 13, 81 S.Ct. 338.

9. Most of the Seventh Circuit's opinion dealt with jurisdictional problems, which, given the *Braden* case, are not present here. However, its handling of the constitutional attack would not be dicta in view of its affirmance of the trial court's dismissal of the action.

notice, and to submit written briefs, on the other hand.

No Fifth Circuit decision directly in point has been located.[10] However, in a brief opinion denying a prisoner's assertion of denial of access to state courts for a damage action, one ground of which related to his inability to appear in person before the state trial court, the Fifth Circuit did cite with apparent approval the *Edgerly* decision, *supra*. *Irwin v. Burson*, 389 F.2d 63 (CA 5 1967). As the case before the appellate court did not involve any difficulties with the territorial jurisdiction of the federal district court, the *Edgerly* decision was apparently being cited for its holding that no constitutional right exists for a prisoner plaintiff to be present for his civil trial.

Two district court opinions have dealt with this question at length. *Seybold v. Milwaukee County Sheriff*, 276 F.Supp. 484 (E.D.Wisc.1967); *Silver v. Dunbar*, 264 F.Supp. 177 (S.D.Cal.1967). Both concluded, with emphasis upon the Supreme Court's *Price* opinion, that granting of the writ to the prisoner-plaintiff was discretionary; and each declined under the circumstances there involved to order the prisoner's presence. In *Silver*, the court indicated that the civil action might be dismissed without prejudice since it viewed the plaintiff's incarceration as tolling any statute of limitations. In *Seybold*, the court concluded that further proceedings in the civil action should be stayed during the plaintiff's incarceration since only in that way could the plaintiff be protected against the statute of limitations. Neither case, it will be noted, allowed the case to be dismissed with prejudice for

want of prosecution, as had been approved in *Edgerly*.

This court concludes, in line with the foregoing authorities, that granting of Ball's petition is a matter of discretion, not of right.[11] Under the circumstances here presented, that petition is due to be denied.

The decision to deny Ball's petition is *not* based on several matters which might possibly be argued as justifying such a conclusion. Among these would be the following:

(1) *Failure to exhaust state remedies*. It could be contended that Ball should have first applied, as a state prisoner, to the appropriate state court and that, having failed to do so, he is precluded in this court by 28 U.S.C. § 2254. The conclusion should be reached, however, that § 2254, as § 2241(d), is inapplicable to ad testificandum petitions. See discussion *supra*. Moreover, such an action would presumably be fruitless in view of Alabama's conclusion that ad testificandum writs for civil cases have been abolished. See footnote 5, *supra*. Even where two forums exist, the opinion has been expressed that the "trial" court is in a better position to rule upon the petition. See *Curran v. U. S.*, 332 F.Supp. 259 (D.C.Del. 1971).

(2) *Failure to file motion as separate action*. It could be argued that a motion in the pending case is inappropriate—that the request should be made by separate application for habeas corpus ad testificandum, naming the persons having custody over Ball. The pleading defects, however, can be corrected by having a copy of the mo-

10. In *Tabor v. Hardwick*, 224 F.2d 526 (CA5 1955), the court spoke of inmates filing civil actions "in the hope of obtaining leave to appear at the hearing of such cases, a phraseology indicating the lack of any "right" to so appear. It must be conceded, however, that, in view of significant developments in this area of the law since 1955, little significance should be placed upon this language, which, after all, was dicta.

11. No problems of right of confrontation, as granted by the Sixth Amendment to the Constitution, are involved in this, a civil case. *Cf. Barber v. Page*, 390 U.S. 719, 88 S.Ct. 1318, 20 L.Ed.2d 255 (1968). The statutory provision allowing parties to "conduct their own cases personally," 28 U.S.C. § 1654, is limited by the considerations underlying the penal system. *Price v. Johnston*, *supra*, 334 U.S. at 285–86, 68 S.Ct. 1049.

tion filed separately without prepayment of fees and costs. The clerk of the court is being herewith directed to allow such filing, though it is then being denied under 28 U.S.C. § 2243 prior to service.

(3) *Discouragement of suits by prisoners.* Some earlier decisions have indicated, as a reason for denying production of a civil plaintiff-prisoner, that such action would serve a policy of discouraging such suits. While it cannot be doubted that discouragement, or at least lack of encouragement, is a predictable by-product of denying such a writ, more recent cases make it clear that such a result would be an impermissible objective as such and denial of "access" to the courts would be an unacceptable form of criminal punishment. If anything, the potential "chilling effect" upon meritorious cases by routine denials of the ad testificandum petitions tends to argue in favor of their granting. It is nevertheless true that the traditional reluctance of federal courts to interfere with the internal management of state prisons, short of constitutional deprivations, has not been wholly abandoned. Moreover, where a state has, as Alabama, opted for deposition-type testimony of state prisoners in civil cases as a means to reduce disruptions inherent in temporary releases from confinement, the federal courts, recognizing that such writs are grounded in concepts of cooperation, should give some weight to state policy. See *Barber v. Page, supra,* 390 U.S. at 723–24, 88 S.Ct. 1318.

■ A factor which may properly be considered in weighing the ad testificandum request in this type of case is the potential danger or hazard presented by presence of the prisoner. Ball

has been convicted of the shot gun murder of a policeman trying to effect his arrest on a charge which, itself, allegedly involved violence or a threat of violence. A reading of his deposition in this case indicates that as late as June of 1975 he was racked with anger and bitterness towards law enforcement personnel specifically and towards authority in general. While admittedly a matter largely of speculation, it must be recognized that bringing Ball to the courtroom in Tuscaloosa, and presumably housing him in the county jail where he already claims to have been abused, poses a not insubstantial risk to the safety of others. This concern is properly to be considered in evaluating Ball's request, though, of course, it does not follow that the serious nature of a prisoner's conviction would necessarily foreclose his presence at a civil trial.

Given a sufficient force of guards, state or federal or both, the hazards to the public could, of course, be minimized. Statement of the condition, however, leads to the next factor which may properly be considered; namely, the expense of his transportation and safekeeping, and the responsibility for such expenses where one sues in forma pauperis. It is apparent that these costs will not be insubstantial if Ball is brought to Tuscaloosa to await and participate in this civil case and, indeed, in his other action when it is ready for trial.[12]

Ball's motion asks that these expenses be taxed as court costs, that is, that the defendants should be responsible for such charges if Ball were to prevail. It is doubtful that the court would have such authority. Certainly Chapter 123 of Title 28, U.S.C., gives no such authority explicitly, and, by omission, would deny such power. The provisions

---

12. The argument could be made that, to reduce expenses and indeed to reduce hazards, Ball's case should be specially set, with trial of other cases scheduled around it. In this day of statutorily-mandated priorities, such pref- erences cannot be lightly given and, moreover, would be unfair to other litigants who suffer in time and expense if their cases are given a subordinate position.

for in forma pauperis proceedings, 28 U.S.C. § 1915, are directed towards waiver of ordinary court costs and the regular fees to be tendered to witnesses. Indeed, witnesses are to attend "as in other cases", 28 U.S.C. § 1915(c); and this presumably would be limited to situations where the proposed civil witness resides in the district or within 100 miles from the place for holding court. F.R.Civ.P. Rule 45.

The motion could, perhaps, be viewed, in the alternative, as offering to reimburse the expenses of Ball's attendance from amounts recovered by him from the defendants. Such a suggestion would draw the court into an ill-advised "mini-consideration" of the merits of the case, one which should be avoided.[13] In denying Ball's motion, the court is not basing its actions upon any consideration of the merits of his case,[14] or of the relative chances of his prevailing, though it may be noted that, as a matter of historical record, very few such suits have resulted in a verdict in the plaintiff's favor.

What if Ball should be unsuccessful in his lawsuit, or should recover some amount less that the expenses incurred in securing his attendance? He is, in effect, asking—or demanding—that the bill be paid from the United States Treasury. Filing and service fees, witness fees, transcript expenses, and miscellaneous costs "as in other cases" may, of course, be borne by the United States with respect to proceedings in forma pauperis. 28 U.S.C. § 1915(a). Expenses of the sort here contemplated appear, however, to be beyond any statutory authority. Cf. F.R.Crim.P. Rule 17. Note also that 28 U.S.C. § 1825, to the extent it may be considered as authorizing payments beyond the normal fees and allowances, is limited to proceedings for writ of habeas corpus or under § 2255.

■ The lack of direct authorization or appropriation for such expenses would not, naturally, be a justification for denying a writ if the prisoner's presence is an essential element of a "right of access" to that court. By holding that the petition for an ad testificandum writ is a matter of discretion, not of right, the court has already held, in effect, that physical presence is not necessarily an attribute of access to the courts. Access—or due process—is ultimately a matter of providing an opportunity to have one's claim resolved in a meaningful manner, and does not guarantee that such claim will be presented in the most effective manner. Cf. Boddie v. Connecticut, 401 U.S. 371, 378–79, 91 S.Ct. 780, 28 L.Ed.2d 113 (1971). This court is unaware, for example, of precedents for any requirement that a government afford legal counsel for the prosecution or defense [15] of a civil action, even though the lack of counsel may result in loss of valuable property. Nor has the court found support for a doctrine that the government must provide funds for the civil plaintiff or defendant to travel to the court where the suit may be filed. Such requirements would be implicit in any "right" on Ball's part to be present for trial. It may be noted that the request to have Ball present to give testimony,

---

13. In some cases, of course, undisputed facts may permit disposition of the case on motion for summary judgment, as was true with respect to Ball's "malpractice" case. But the strictures against promiscuous granting of such motions should apply to the prisoner case no less validly than to other civil actions.

14. To a degree, the nature of the prisoner's civil action may play a role in deciding upon his request to be present. That is, there may be public interest considerations involved in some cases, providing an additional reason for the public to bear the expense, hazard, and disruption caused by securing his presence at the trial. That Ball's suits are under § 1983 for alleged deprivation of constitutional rights is a "plus" factor in his favor here, though not to the same extent as it would be in a case involving some continuing policy in derogation of such rights.

15. Analysis should include consideration of the indigent, or imprisoned, defendant as well as the similarly situated plaintiff.

that is, to have him present *qua* witness, exceeds that which other parties in a civil action may obtain as of right, they being limited to a smaller geographical area under F.R.Civ.P. Rule 45.[16]

Can Ball receive a meaningful resolution of this case without being personally present? The answer here, in his "arrest" case, is yes. His cause can, and will, be presented by counsel appointed to represent him. His deposition has been taken,[17] and can be received in evidence.[18] According to statements of counsel at pre-trial conference, there are witnesses—other than plaintiff, the defendants, and other police officers—to significant portions of the events which are at the heart of this lawsuit. Plaintiff's counsel has been forewarned some two months in advance of the scheduled trial to prepare the case for presentation in the absence of his client.

The court is not so naive as to assert that Ball's absence will have no adverse effect upon his case. Indeed, very likely it will to some degree have that consequence, if for no other reason than in depriving his counsel of valuable consultation during cross-examination of the defendants. But, at the same time, it should not be thought that his absence will be fatal to his cause or, indeed, that it will necessarily be to his disadvantage. Civil cases are occasionally tried without the courtroom presence of a party— and where that absence is shown to be involuntary—[19] with success. A witness' credibility—or, rather, lack of it— has sometimes been more apparent from his courtroom testimony than from reading his deposition. It is not without significance that explicit provision is made in the Federal Rules of Civil Procedure for deposing an imprisoned witness, F.R.Civ.P. 30(a) and 31(a), and for its subsequent use at trial, F.R.Civ. P. 32(a)(3)(C).

Sometimes a court, in denying a prisoner-plaintiff's ad testificandum petition, has simply stayed further proceedings in the case pending his release. See *Seybold, supra,* 276 F.Supp. 484. This procedure may be sensible where a potential release is foreseeable in the near future; but to allow the cloud of an unmeritorious lawsuit—which can only be determined by a trial—to continue indefinitely is hardly fair to a defendant where other procedures, consonant with the plaintiff's rights, can be found.

In Ball's "'arrest" case, a fair trial can be conducted notwithstanding the court's denial, on balance, of his ad testificandum request.

In Ball's "jail" case, there are additional considerations. In this case his deposition has not been taken, he does not have an attorney, and the court is without information as to the existence of other witnesses. One solution, of course, would be to schedule the case for trial and bring Ball to court, on application, to participate in that trial. A trial under such circumstances, based on the court's experience and on the glimpse into Ball's personality provided by the deposition in the "arrest" case, would be an exercise in futility. See *Price v. Johnston, supra,* 334 U.S. at 284–85, 68 S.Ct. 1049.[20] Another solu-

---

16. A counter-argument that Ball's unavailability is involuntary is hardly tenable, given the implications of criminal punishment.

17. Ball can hardly be heard to complain that, due to his recalcitrance, evasiveness and antagonism during the course of his deposition, it may not be favorably received by the jury.

18. Ball's deposition may be offered into evidence by his own counsel under F.R.Civ.P. 32(a)(3)(C).

19. Ball's imprisonment will no doubt be shown for impeachment whether he is present or not. Note that the "weighing" of prejudice versus probative value with respect to a murder conviction under Rule 609(a)(1) of the F.R. E. is not required in a civil case. See Conference Report.

20. The court has no reason to believe that Ball's lawsuits reflect "a mere desire to be freed temporarily from the confines of the

tion would be to appoint counsel; but, as noted, this has already been attempted "as a request" under 28 U.S.C. § 1915.[21] Another solution would be to call the case for trial, without Ball or an appointed attorney present, and then dismiss for want of prosecution, a procedure apparently condoned in *Edgerly v. Kennelly,* 215 F.2d 420 (CA 7 1954). This, however, seems unfair to Ball who may have a meritorious claim and who, after all, may have some change of circumstances in the future which would permit him to present in a meaningful manner his claims. *Cf. Boddie v. Connecticut,* 401 U.S. 371, 91 S.Ct. 780, 28 L.Ed.2d 113 (1971). Still another solution would be to stay further proceedings indefinitely, such as was done in *Seybold v. Milwaukee County Sheriff,* 276 F.Supp. 484 (E.D.Wis.1967); but this, under the circumstances, could be unfair to the defendant.

A final solution—and the one adopted here—is a variant of the procedure adopted in *Silver v. Dunbar,* 264 F.Supp. 177 (S.D.Cal.1967). At the court's suggestion, the defendant in Ball's "jail" case has filed with the court an agreement to waive any defense of the statute of limitations should Ball at some subsequent time file an action complaining of the same acts as involved in his present case. With this waiver agreement, Ball's case can be dismissed for want of prosecution *without prejudice,* allowing him to file another action against the defendant for this complaint, if he should desire to do so and have some change of circumstances which would permit the meaningful presentation of his claims. Ball will be in essentially the same position as he would have been had the case been stayed as an inactive one, save that he would need to re-serve the defendant in some future action—a

requirement which seems only fair to the defendant. Moreover, Ball will have a final decision from this court from which he can appeal, should be choose to do so.

In ruling against Ball's petition in the "arrest" case and in anticipating such a ruling in his "jail" case by dismissing the same for want, or inability, of prosecution, though without prejudice, the court should not be understood as ruling against ad testificandum requests by prisoner-plaintiffs in other civil actions. Such cases, when they come, will be reviewed individually upon the circumstances there involved, though with some reliance upon the principles stated in this opinion.

---

prison." But the court does doubt that he is capable of conducting an intelligent and responsible trial and, as previously noted, concludes that his presence in the courtroom cannot be secured without undue inconvenience and danger. *Cf. Price, supra,* 334 U.S. at 284–85, 68 S.Ct. 1049.

21. Where an attorney, willing to accept representation in one such case, has declined such undertaking in a related second case, the court should not be blind to the significance of such action—and, after all, the court should exercise judgment in deciding when a *gratis* appointment of counsel should be made.