**Martha U. MOORE and Charles J. Moore, her husband, Plaintiffs,**

**v.**

**VOLKSWAGENWERK, A.G., Volkswagen of America, Inc. and Southern Volkswagen, Inc., Defendants.**

Civ. A. No. R–79–202.

United States District Court, D. Maryland.

Nov. 3, 1983.

---

Ronald A. Silkworth, O'Connor, Preston, Glenn & Smith, P.A., Baltimore, Md., Henry H. Wallace, Wallace, Chapas & Ober, Pittsburgh, Pa., for plaintiff.

William N. Zifchak, Sasscer, Clagett, Channing & Bucher, Upper Marlboro, Md., for Southern Volkswagen, Inc.

Leonard L. Lipshultz, Silver Spring, Md., for Volkswagenwerk, A.G. and Volkswagen of America, Inc.

## MEMORANDUM AND ORDER

RAMSEY, District Judge.

Currently before the Court is plaintiffs' motion in limine to exclude all evidence of the criminal convictions of a potential witness, William Joseph Parker. Defendant opposes the motion, and has filed a memorandum in opposition. The Court now rules pursuant to Local Rule 6(E) without the need for oral argument.

Plaintiffs Martha Moore and Charles Moore filed this action against the defendants, Volkswagenwerk, A.G., Volkswagen of America, Inc., and Southern Volkswagen, Inc., alleging primarily that Mrs. Moore's seat belt failed to restrain her properly upon impact with another car. According to plaintiffs, William Joseph Parker, the former lieutenant of the Bowie Volunteer Fire and Rescue Squad, was present at the scene of the February, 1976 accident, had observed that Mrs. Moore was wearing her seat belt, but that the belt had "played all the way out," and had unlached her seat belt. Defendants contend that Parker was not present at the accident scene and that Mrs. Moore was not wearing her seat belt. Parker's credibility as a witness, therefore, comes into question.

After the 1976 accident, on April 14, 1979, the Circuit Court for Saint Mary's County, Maryland, convicted Parker of felony-murder, second-degree rape, and use of handgun, and sentenced him to life imprisonment plus fifteen years. The plaintiffs argue that under Fed.R.Evid. 609(a)(1) and 403, these convictions are inadmissible for purposes of impeachment or for any other purpose. Defendants counter that Rule 609(a)(1) bars the use of convictions for impeachment purposes only in criminal trials, and that Rule 403 is inapplicable because Rule 609(a) preempts the weighing contemplated by Rule 403. If, however, Rule 403 is to be applied to this issue, they argue that the balancing test clearly results in admitting the evidence rather than in excluding it.

The Federal Rules of Evidence provide poor guidance as to whether criminal convictions are admissible to attack the credibility of a non-party witness in a civil case. No rule expressly deals with this situation. Rule 404(a)(3) permits a party to introduce "[e]vidence of the character of a witness, as provided in Rules 607, 608 and 609." Under Rule 607, "[t]he credibility of a witness may be attacked by any party, including the party calling him." Rule 608(b), which concerns evidence of specific instances of conduct provides, in pertinent part, that:

> Specific instances of the conduct of a witness, for the purpose of attacking or supporting his credibility, other than conviction of crime as provided in rule 609, may not be proved by extrinsic evidence. They may, however, in the discretion of the court, if probative of truthfulness or untruthfulness, be inquired into on cross-examination of the witness (1) concerning his character for truthfulness or untruthfulness, or (2) concerning the character for truthfulness or untruthfulness of another witness as to which character the witness being cross-examined has testified.

Relying on this rule, the plaintiff contends that the admissibility of Parker's convictions should be examined under the standards set forth in Rule 609(a)(1).

██ Rule 609(a)(1), the rule to which Rule 608(b) seemingly points in a case such

as this, is not the proper avenue to examine the admissibility of criminal convictions in a civil case. Under this rule,

> ... For the purpose of attacking the credibility of a witness, evidence that he has been convicted of a crime shall be admitted if elicited from him or established by public record during cross-examination but only if the crime (1) was punishable by death or imprisonment in excess of one year under the law under which he was convicted, and the court determines that the probative value of admitting this evidence outweighs its prejudicial effect to the defendant....

Fed.R.Evid. 609(a)(1). The plaintiff suggests that this Court ignore the plain meaning of the phrase "prejudicial effect to the defendant," which suggests that the rule is tailored to criminal trials and the fear that the prior convictions of the testifying criminal defendant and other witnesses at trial may improperly sway the jury against the defendant. *See, e.g., United States v. Smith,* 551 F.2d 348, 360 (D.C.Cir.1976) (discussing intention of drafters of rule to protect interest of criminal defendant, not prosecution or non-defendant witness); K. Redden & S. Saltzburg, *Federal Rules of Evidence Manual* 181–82 (1975) (protects criminal defendant from prejudicial impeachment of defendant and defense witnesses). Instead, the plaintiff urges the Court to interpret "defendant" as meaning "opposing party."

"[S]ubsection (a)(1) is deficient, in that it cannot be sensibly applied in civil cases." J. Moore, 10 *Moore's Federal Practice* § 609.14[4], at VI–148 (1982).[1] One court has "noted that the 'weighing' of prejudice versus probative value with respect to a murder conviction under Rule 609(a)(1) ... [is] not required in a civil case." *Ball v. Woods,* 402 F.Supp. 803, 811 n. 19 (D.Ala. 1975), *aff'd on other grounds,* 529 F.2d 520

(5th Cir.) *cert. denied,* 426 U.S. 940, 96 S.Ct. 2660, 49 L.Ed.2d 393 (1976). Although several courts, however, have applied Rule 609(a)(1) to the use of convictions in civil cases, none appear to have addressed the issue whether this rule is used properly in this context. *See, e.g., Shingleton v. Armor Velvet Corp.,* 621 F.2d 180, 183 (5th Cir.1980) (per curiam); *Howard v. Gonzales,* 658 F.2d 352, 359 (5th Cir.1981); *Calhoun v. Baylor,* 646 F.2d 1158, 1163 (8th Cir.1981); *see also Carlsen v. Jaburek,* 526 F.2d 202, 210 (8th Cir.1975) (relying on rule prior to implementation of Federal Rules of Evidence); *see also* J. Weinstein & M. Berger, 3 *Weinstein's Evidence* ¶ 609[06] at 609–89 to 90 (1981). In comparison to these few cases, the overwhelming majority of reported cases relying on Rule 609(a)(1) are criminal actions. *See, e.g., United States v. Cunningham,* 638 F.2d 696 (4th Cir.1981).

The Court will not examine the admissibility of Parker's convictions under Rule 609(a)(1). The language of the rule does not require that it be applied in civil cases (except, possibly, in civil habeas corpus proceedings [2]). The delicate balancing process in Rule 609(a)(1), in which the judge decides whether "the probative value of admitting this evidence outweighs its prejudicial effect to the defendant," differs significantly from the general probative value-prejudice test in Rule 403. Rule 403 tips the scales in the opposite direction, and requires a determination whether "its probative value is substantially outweighed by the danger of unfair prejudice...." The decision in Rule 609(a)(1) to more readily prevent prejudice in lieu of admitting probative evidence appears to be founded on considerations unique to a criminal trial. *See supra* note 1. In drafting Rule 609(a)(1), Congress was concerned primarily about the

---

1. The difficulty in applying Rule 609(a)(1) to civil cases may have been an unintentional oversight on the part of the drafters of the Federal Rules of Evidence or the result of a decision to mold a rule for criminal trials only. In either case, the Congressional reports and debates surrounding the rule primarily discuss the proper balance between a defendant's rights and the

desirability of impeaching another's witnesses at length. *See* K. Redden & S. Saltzburg, *supra,* at 181–93.

2. *See, e.g., Mills v. Estelle,* 552 F.2d 119 (5th Cir.), *cert. denied,* 434 U.S. 871, 98 S.Ct. 214, 54 L.Ed.2d 149 (1977).

criminal defendant, not merely a Rule 403-style evidentiary decision on probative value versus prejudice.

Since Rule 609(a)(1) is inapplicable, this Court must decide whether Parker's convictions may be admitted at trial under Rule 608(b) and 403. The case law under Rule 609(a)(1), however, may provide guidance in analyzing the probative value as to Parker's three convictions and the resultant prejudice if admitted. As noted, Rule 608(b) permits evidence of specific instances of the conduct of a witness for the purpose of attacking or supporting his credibility if, in the court's discretion, it is probative of truthfulness or untruthfulness. Rule 403 applies to any situation unless another rule absolutely bars certain evidence or sets up a decision-making procedure that preempts any 403 weighing. *See, e.g., United States v. Layva*, 659 F.2d 118, 121 (9th Cir.1981) (Rule 403 does not apply in a Rule 609(a)(2) situation); *see also* J. Weinstein & M. Berger, *supra* ¶ 403[1], at 403–5; K. Redden & S. Saltzburg, *supra*, at 69–70. Rule 608(b) does not preclude the 403 weighing process. Instead, the rule invites the exercise of the Court's discretion. Thus, the Court will examine the probative value of the convictions in light of the other evidence available to the defendants, and the prejudice inherent in these convictions.

The truthfulness of Parker's testimony that he was present at the accident scene and that Mrs. Moore had been wearing her seat belt will be subjected to attack at trial. The task of this Court at present is not to judge whether Parker is a truthful person, but to examine the probative value of his convictions and their prejudicial effect, in light of the evidence likely to be presented at trial. According to the defendants, "[n]o other eyewitnesses, including fellow rescue squad members, recall his presence at the scene, or that Mrs. Moore was restrained by the available occupant restraint assembly." At his deposition on September 4, 1979—five months after his murder, rape, and handgun convictions—Parker

demonstrated a thorough knowledge of the 1976 accident scene. For example, he recollected that "[t]he only thing that was missing or had been damaged was the rear view mirror...." He described in detail how he helped emergency medical technician Thomas Kissinger aid Mrs. Moore. In addition, he resisted suggestions by defendants' counsel that plaintiffs' counsel had coached him or that he had seen official reports prior to a July 27, 1979 tape-recorded interview with plaintiffs' investigator. Transcripts of this interview have been supplied to defendants' counsel, but they did not inform the Court in their memorandum in opposition of any segments that they consider to constitute "coaching." When tested by defense counsel as to other February, 1976 accidents, Parker was similarly thorough in his recall.

While defendants may be correct that "[n]o other eyewitnesses, including fellow rescue squad members, recall [Parker's] presence at the scene, or that Mrs. Moore was restrained by the available restraint assembly," this characterization of the record may be misleading. In their memoranda, defendants do not point to any witnesses who state that Parker was *not* present or that Mrs. Moore was *not* wearing a seat belt. A review of the depositions show that many of the witnesses are hazy about the names of, or even the number of, "ambulance people" present at the accident scene.[3] While these materials fail to confirm that Parker was present, Parker's account is consistent with the recollection of other witnesses. For example, the deposition of Thomas Kissinger, the emergency medical technician who aided Mrs. Moore, does not suggest to this Court that Parker necessarily was absent from the accident scene. Although Kissinger does not specifically remember Parker being present, he did remember someone helping him in the manner described by Parker. When asked if he remembered who offered to help him with Mrs. Moore, Kissinger replied:

A. No, sir, I don't. It was somebody standing there and I seem to remember

---

3. *See, e.g.,* Deposition of Boyd G. Will.

saying, "Can I help?" and I think I turned to them and said, "Can you get the suction unit off the back dash," which is where we normally carried it, but I don't remember who it was that was there.

Q. Was this another rescue person?

A. I don't remember. I don't think it was. It was somebody who seemed familiar—if I remember correctly seemed to be familiar with the fire department, because I don't remember him asking, "What is a suction unit?" or something like that. He seemed to know what I was talking about immediately.

Q. Did this person bring the suction unit to you?

A. Yes, sir, he did. I believe it was the same person. Somebody brought me the suction unit.

This testimony suggests that someone knowledgeable with medical procedures assisted Kissinger. The person may have been Parker. In addition, Kissinger remembers the presence of ambulance no. 399, the one that Parker stated that he arrived in.

Introduction of Parker's 1979 convictions for felony murder, second degree rape, and use of a handgun into evidence might be said to create a "danger of unfair prejudice." According to the Advisory Committee, " 'unfair prejudice' within its context means an undue tendency to suggest decision on an improper basis, commonly, though not necessarily, an emotional one." A jury, of course, may be improperly swayed if it knew that Parker were a murderer and a rapist. *See* J. Weinstein & M. Berger, *supra,* ¶ 609[04]. This prejudice, however, under Rule 403, must "substan-

tially outweigh" the probative value of the convictions.

Defendants suggest that Parker's convictions may have given him a motive to lie:

It may very well be that, in this mind, any cooperation with a party in a civil suit who requests it, may, in some way, contribute to eventual release. Perhaps he sees his testimony at this trial as plaintiff's witness as a means of enhancing his prison record when and if it is evaluated by a parole board.[4]

Although other impeachment approaches are available to the defendants,[5] Parker's convictions, especially in light of the apparent absence of any mention of Parker in regard to this accident until 1979, are valuable impeachment tools.

■■■ Decision under Rule 403 is entrusted to the discretion of the trial court. *United States v. Black,* 692 F.2d 314, 316 (4th Cir.1982); *accord United States v. Dominquez,* 604 F.2d 304, 310 (4th Cir. 1979). This Court finds that the probative value of the evidence of Parker's convictions is not substantially outweighed by the danger of unfair prejudice. The probative value of these convictions is not insignificant and, when compared with their prejudicial effect, the balance favors admission. The potential for decision on an improper basis does not substantially outweigh the value of the convictions as proper impeachment tools.

For the reasons stated herein, it is this 3rd day of November, 1983, by the United States District Court for the District of Maryland,

ORDERED:

1. That plaintiffs' motion in limine to exclude all evidence of the criminal convic-

---

4. The record does not state how the plaintiffs' investigator found Parker, but his silence until 1979 may be easily explained. This action was not filed until January, 1979, and plaintiffs' investigator did not contact Parker until July, 1979. The apparent absence of his name on the dispatch data and fire department reports may be insignificant. Neither counsel has shown that the names of members of the Bowie Volunteer Fire Rescue Squad regularly appear on such reports.

5. Parker's powers of recollection were tested at the deposition when he was asked to recall details of the Moore accident and the immediately preceding and subsequent "major" accidents. This testimony can be compared to police reports and the testimony of others to determine whether his ability to recollect details is sufficient to enable him to remember what he purports to recall regarding the Moore accident.

tions of William Joseph Parker is DENIED; and

2. That the Clerk of the Court shall mail copies of this Memorandum and Order to all counsel of record.